**KOPELOWITZ OSTROW P.A.**
Kristen Lake Cardoso (SBN 338762)
cardoso@kolawyers.com
One West Las Olas Blvd., Suite 500
Fort Lauderdale, Florida 33301
Telephone: 954-525-4100

*Counsel for Plaintiff and the Putative Class*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **ANGELA MORGAN**, *individually and on behalf of all others similarly situated*,<br><br>     Plaintiff,<br><br>v.<br><br>**POSTMEDS, INC. d/b/a TRUEPILL**,<br><br>     Defendant. | **Case No.**<br><br>**PLAINTIFF'S CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Angela Morgan, individually and on behalf of all similarly situated persons, alleges the following against PostMeds, Inc. D/B/A TruePill ("PostMeds" or "Defendant") based on personal knowledge with respect to herself and on information and belief derived from, among other things, investigation by his counsel and review of public documents, as to all other matters:

**I.     INTRODUCTION**

1.     Plaintiff brings this class action against Defendant for its failure to properly secure and safeguard Plaintiff's and other similarly situated customers' sensitive information, including Class Members' full names, demographic information ("personally identifiable information" or "PII") and medical and health insurance information, which is protected health information ("PHI", and collectively with PII, "Private Information") as defined by the Health Insurance Portability and Accountability Act of 1996 ("HIPAA").

1

2        2.        Defendant is a digital pharmacy that "operates a nationwide network of URAC-
3              accredited mail order and specialty pharmacies."[1]

4        3.        Upon information and belief, former and current Defendant customers are required
5    to entrust Defendant with Private Information without which Defendant could not perform its regular
6    business activities, in order to obtain services from Defendant. Defendant retains this information for
7    at least many years and even after the consumer relationship has ended.

8        4.        By obtaining, collecting, using, and deriving a benefit from the Private Information
9    of Plaintiff and Class Members, Defendant assumed legal and equitable duties to those individuals to
10   protect and safeguard that information from unauthorized access and intrusion.

11       5.        In August of 2023, Defendant "discovered that a bad actor gained access to a subset
12   of files used for pharmacy management and fulfillment services" and a Notice Letter was sent to
13   victims dated October 30, 2023. *See* Exhibit A. Otherwise, Defendant has taken no steps to inform
14   Plaintiff and Class Members that their Private Information had been compromised even though
15   Defendant knew or should have known and that they were, and continue to be, at significant risk of
16   identity theft and various other forms of personal, social, and financial harm. The risk will remain
17   for their respective lifetimes.

18       6.        Defendant failed to adequately protect Plaintiff's and Class Members' Private
19   Information. This Private Information was compromised due to Defendant's negligent and/or
20   careless acts and omissions and their utter failure to protect customers' sensitive data. Hackers
21   targeted and obtained Plaintiff's and Class Members' Private Information because of its value in
22   making fraudulent purchases and exploiting or stealing the identities of Plaintiff and Class Members.
23   The present and continuing risk to victims of the Data Breach will remain for their respective
24   lifetimes.

25       7.        Plaintiff brings this action on behalf of all persons whose Private Information was
26   compromised as a result of Defendant's failure to: (i) adequately protect the Private Information of

27   _____
[1] https://www.truepill.com/ (last accessed Nov. 9, 2023).

28

Plaintiff and Class Members; (ii) warn Plaintiff and Class Members of Defendant's inadequate information security practices; and (iii) effectively secure hardware containing protected Private Information using reasonable and effective security procedures free of vulnerabilities and incidents. Defendant's conduct amounts at least to negligence and violates federal and state statutes.

8. Defendant disregarded the rights of Plaintiff and Class Members by intentionally, willfully, recklessly, or negligently failing to implement and maintain adequate and reasonable measures and ensure those measures were followed by its IT vendors to ensure that the Private Information of Plaintiff and Class Members was safeguarded, failing to take available steps to prevent an unauthorized disclosure of data, and failing to follow applicable, required, and appropriate protocols, policies, and procedures regarding the encryption of data, even for internal use. As a result, the Private Information of Plaintiff and Class Members was compromised through disclosure to an unknown and unauthorized third party.

9. Plaintiff and Class Members have a continuing interest in ensuring that their Private Information is and remains safe, and they should be entitled to injunctive and other equitable relief.

10. Plaintiff and Class Members have suffered injury as a result of Defendant's conduct. In addition to fraud, these injuries include: (i) invasion of privacy; (ii) lost or diminished value of Private Information; (iii) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (iv) loss of benefit of the bargain; (v) and increase in spam calls, texts, and/or emails; and (vi) the continued and certainly increased risk to their Private Information, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) remains backed up in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Private Information.

11. Plaintiff and Class Members seek to remedy these harms and prevent any future data compromise on behalf of himself and all similarly situated persons whose personal data was compromised and stolen as a result of the Data Breach and who remain at risk due to Defendant's inadequate data security practices.

## II.    PARTIES

12.    Plaintiff Angela Morgan, is, and at all times mentioned herein was, an individual citizen and resident of the State of Tennessee. Plaintiff received a Notice of Data Breach letter (attached hereto as **Exhibit A**), via U.S. mail.

13.    Defendant is a Delaware corporation with its principal place of business located at 3121 Diablo Avenue, Hayward, California 94545.

## III.    JURISDICTION AND VENUE

14.    The Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs. The number of class members is over 100, many of whom reside outside the state of Texas and have different citizenship from Defendant, including Plaintiff. Thus, minimal diversity exists under 28 U.S.C. §1332(d)(2)(A)

15.    This Court has personal jurisdiction over Defendant because its principal place of business is in this District, regularly conducts business in California, and the acts and omissions giving rise to Plaintiff's claims occurred in and emanated from this District.

16.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)(1) because Defendant's principal place of business is located in this District, a substantial part of the events giving rise to this action occurred in this District, and Defendant has harmed Class Members residing in this District.

## IV.    FACTUAL ALLEGATIONS

### A.    *Defendant's Business*

17.    Defendant PostMeds is a digital pharmacy.

18.    Plaintiff and Class Members are current and former customers at PostMeds.

19.    As a condition of obtaining services at PostMeds, Plaintiff and Class Members were required to provide their Private Information to Defendant.

20.    The information held by Defendant in its computer systems at the time of the Data Breach included the unencrypted Private Information of Plaintiff and Class Members.

21.     Upon information and belief, in the course of collecting Private Information from its customers, including Plaintiff, Defendant promised to provide confidentiality and adequate security for customer data through its applicable privacy notice and through other disclosures in compliance with statutory privacy requirements.

22.     Indeed, Defendant's Notice of Privacy Practices provides that:

- We are required by law to maintain the privacy and security of your protected health information.

- We will let you know promptly if a breach occurs that may have compromised the privacy or security of your information.

- We must follow the duties and privacy practices described in this notice and give you a copy of it.

- We will not use or share your information other than as described here unless you tell us we can in writing. If you tell us we can, you may change your mind at any time. Let us know in writing if you change your mind.[2]

23.     Plaintiff and Class Members provided their Private Information to Defendant with the reasonable expectation and on the mutual understanding that Defendant would comply with its obligations to keep such information confidential and secure from unauthorized access.

24.     Plaintiff and the Class Members have taken reasonable steps to maintain the confidentiality of their Private Information. Plaintiff and Class Members relied on the sophistication of Defendant to keep their Private Information confidential and securely maintained, to use this information for necessary purposes only, and to make only authorized disclosures of this information. Plaintiff and Class Members value the confidentiality of their Private Information and demand security to safeguard their Private Information.

25.     Defendant had a duty to adopt reasonable measures to protect the Private Information of Plaintiff and Class Members from involuntary disclosure to third parties.

---

[2] https://www.truepill.com/legal/nopp (last accessed Nov. 9, 2023).

26.    Defendant has a legal duty to keep customers' Private Information safe and confidential.

27.    Defendant had obligations created by FTC Act, HIPAA, contract, industry standards, and representations made to Plaintiff and Class Members, to keep their Private Information confidential and to protect it from unauthorized access and disclosure.

28.    Defendant derived a substantial economic benefit from collecting Plaintiff's and Class Members' Private Information. Without the required submission of Private Information, Defendant could not perform the services it provides.

29.    By obtaining, collecting, using, and deriving a benefit from Plaintiff's and Class Members' Private Information, Defendant assumed legal and equitable duties and knew or should have known that it was responsible for protecting Plaintiff's and Class Members' Private Information from disclosure.

**B.    *The Data Breach***

30.    On October 30, 2023, Defendant began sending Plaintiff and other Data Breach victims an untitled Notice Letter (the "Notice Letter"), informing them of the following:

> **What Happened**: On August 31, 2023, we discovered that a bad actor gained access to a subset of files used for pharmacy management and fulfillment services. We immediately launched an investigation with assistance from cybersecurity professionals and worked quickly to secure our environment.

> **What Information Was Involved**: Our investigation determined that the bad actor accessed the files between August 30, 2023 and September 1, 2023. One or more of those files contained your name and prescription information. The information varied by individual, but may have included medication type, demographic information, and/or prescribing physician.

*See* Exhibit A.

31.    Omitted from the Notice Letter were any details about what demographic

information was compromised, the details of the root cause of the Data Breach, the vulnerabilities exploited, and the remedial measures undertaken to ensure such a breach does not occur again. These critical facts have not been explained or clarified to Plaintiff and Class Members, who retain a vested interest in ensuring that their Private Information remains protected.

32.    This "disclosure" amounts to no real disclosure at all, as it fails to inform, with any degree of specificity, Plaintiff and Class Members of the Data Breach's critical facts. Without these details, Plaintiff's and Class Members' ability to mitigate the harms resulting from the Data Breach is severely diminished.

33.    Defendant did not use reasonable security procedures and practices appropriate to the nature of the sensitive information they were maintaining for Plaintiff and Class Members, causing the exposure of Private Information, such as encrypting the information or deleting it when it is no longer needed.

34.    The attacker accessed and acquired files Defendant shared with a third party containing unencrypted Private Information of Plaintiff and Class Members, including their PHI and other sensitive information. Plaintiff's and Class Members' Private Information was accessed and stolen in the Data Breach.

35.    Plaintiff has already been informed that his Private Information has been disseminated on the dark web, and Plaintiff further believes that the Private Information of Class Members was subsequently sold on the dark web following the Data Breach, as that is the modus operandi of cybercriminals that commit cyber-attacks of this type.

**C.    *Defendant Acquires, Collects, and Stores Plaintiff's and the Class's Private Information.***

36.    As a condition to obtain products and/or services from Defendant, Plaintiff and Class Members were required to give their Private Information to Defendant.

37.    Defendant retains and stores this information and derives a substantial economic benefit from the Private Information that they collect. But for the collection of Plaintiff's and Class Members' Private Information, Defendant would be unable to perform its services.

38.     By obtaining, collecting, and storing the Private Information of Plaintiff and Class Members, Defendant assumed legal and equitable duties and knew or should have known that they were responsible for protecting the Private Information from disclosure.

39.     Plaintiff and Class Members have taken reasonable steps to maintain the confidentiality of their Private Information and relied on Defendant to keep their Private Information confidential and maintained securely, to use this information for business purposes only, and to make only authorized disclosures of this information.

40.     Defendant could have prevented this Data Breach by properly securing and encrypting the files and file servers containing the Private Information of Plaintiff and Class Members or by exercising due diligence in selecting its IT vendors and properly auditing those vendor's security practices.

41.     Upon information and belief, Defendant made promises to Plaintiff and Class Members to maintain and protect their Private Information, demonstrating an understanding of the importance of securing it.

42.     Defendant's negligence in safeguarding the Private Information of Plaintiff and Class Members is exacerbated by the repeated warnings and alerts directed to protecting and securing sensitive data.

**D.     *Defendant Knew or Should Have Known of the Risk of Cyber Attacks.***

43.     Defendant's data security obligations were particularly important given the substantial increase in cyber-attacks and/or data breaches targeting businesses that collect and store Private Information, like Defendant, preceding the date of the breach.

44.     Data thieves regularly target companies like Defendant's due to the highly sensitive information that they control. Defendant knew and understood that unprotected Private Information is valuable and highly sought after by criminal parties who seek to illegally monetize that Private Information through unauthorized access.

45.     In 2021, a record 1,862 data breaches occurred, resulting in approximately

293,927,708 sensitive records being exposed, a 68% increase from 2020.[3]

46.    In light of recent high profile data breaches at other industry leading companies, including, Microsoft (250 million records, December 2019), Wattpad (268 million records, June 2020), Facebook (267 million users, April 2020), Estee Lauder (440 million records, January 2020), Whisper (900 million records, March 2020), and Advanced Info Service (8.3 billion records, May 2020), Defendant knew or should have known that the Private Information that they collected and maintained would be targeted by cybercriminals.

47.    As a custodian of Private Information, Defendant knew, or should have known, the importance of safeguarding the Private Information entrusted to it by Plaintiff and Class members, and of the foreseeable consequences if its data security systems, or those of its vendors, were breached, including the significant costs imposed on Plaintiff and Class Members as a result of a breach.

48.    Despite the prevalence of public announcements of data breach and data security compromises, Defendant failed to take appropriate steps to protect the Private Information of Plaintiff and Class Members from being compromised.

49.    At all relevant times, Defendant knew, or reasonably should have known, of the importance of safeguarding the Private Information of Plaintiff and Class Members and of the foreseeable consequences that would occur if Defendant's data security system was breached, including, specifically, the significant costs that would be imposed on Plaintiff and Class Members as a result of a breach.

50.    Additionally, as companies became more dependent on computer systems to run their business,[4] *e.g.*, working remotely as a result of the Covid-19 pandemic, and the Internet of Things ("IoT"), the danger posed by cybercriminals is magnified, thereby highlighting the need for

---

[3] *See* 2021 Data Breach Annual Report (ITRC, Jan. 2022) (https://notified.idtheftcenter.org/s/), at 6.

[4] https://www.federalreserve.gov/econres/notes/feds-notes/implications-of-cyber-risk-for-financial-stability-20220512.html (last visited Sept. 20, 2023).

adequate administrative, physical, and technical safeguards.[5]

51.    Defendant was, or should have been, fully aware of the unique type and the significant volume of data on Defendant's server(s), amounting to potentially thousands of individuals' detailed, Private Information, and, thus, the significant number of individuals who would be harmed by the exposure of the unencrypted data.

52.    In the Notice Letter, Defendant did not offer to cover identity monitoring services and entirely fails to provide compensation for the unauthorized release and disclosure of Plaintiff and Class Members' Private Information.

53.    The injuries to Plaintiff and Class Members were directly and proximately caused by Defendant's failure to implement or maintain adequate data security measures for the Private Information of Plaintiff and Class Members.

54.    The ramifications of Defendant's failure to keep secure the Private Information of Plaintiff and Class Members are long lasting and severe. Private Information is stolen—fraudulent use of that information and damage to victims may continue for years.

### E.    *Value of the Private Information*

55.    The Federal Trade Commission ("FTC") defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority."[6] The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person."[7]

56.    The Private Information of individuals remains of high value to criminals, as evidenced by the prices they will pay through the dark web. Numerous sources cite dark web pricing for stolen identity credentials.[8]

---

[5]  https://www.picussecurity.com/key-threats-and-cyber-risks-facing-financial-services-and-banking-firms-in-2022 (last visited Sept. 20, 2023).

[6] 17 C.F.R. § 248.201 (2013).

[7] *Id.*

[8] *Your personal data is for sale on the dark web. Here's how much it costs,* DIGITAL TRENDS, Oct. 16, 2019, https://www.digitaltrends.com/computing/personal-data-sold-on-the-dark-web-how-much-it-costs/ (last visited Sept. 22, 2023).

57.     For example, Private Information can be sold at a price ranging from \$40 to \$200.[9] Criminals can also purchase access to entire company data breaches from \$900 to \$4,500.[10]

58.     Among other forms of fraud, identity thieves may obtain driver's licenses, government benefits, medical services, and housing or even give false information to police.

59.     The fraudulent activity resulting from the Data Breach may not come to light for years. There may be a time lag between when harm occurs versus when it is discovered, and also between when Private Information is stolen and when it is used. According to the U.S. Government Accountability Office ("GAO"), which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[11]

**F.     *Defendant Failed to Comply with FTC Guidelines.***

60.     The Federal Trade Commission ("FTC") has promulgated numerous guides for businesses which highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision making. Indeed, the FTC has concluded that a company's failure to maintain reasonable and appropriate data security for consumers' sensitive personal information is an "unfair practice" in violation of Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. *See, e.g., FTC v. Wyndham Worldwide Corp.,* 799 F.3d 236 (3d Cir. 2015).

61.     In October 2016, the FTC updated its publication, Protecting Personal Information: A Guide for Business, which established cybersecurity guidelines for businesses. The guidelines

---

[9] *Here's How Much Your Personal Information Is Selling for on the Dark Web*, EXPERIAN, Dec. 6, 2017, https://www.experian.com/blogs/ask-experian/heres-how-much-your-personal-information-is-selling-for-on-the-dark-web/.

[10] *In the Dark*, VPNOVERVIEW, 2019, https://vpnoverview.com/privacy/anonymous-browsing/in-the-dark/.

[11] *Report to Congressional Requesters*, GAO, at 29 (June 2007), https://www.gao.gov/assets/gao-07-737.pdf.

note that businesses should protect the personal customer information that they keep, properly dispose of personal information that is no longer needed, encrypt information stored on computer networks, understand their network's vulnerabilities, and implement policies to correct any security problems. The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs, monitor all incoming traffic for activity indicating someone is attempting to hack into the system, watch for large amounts of data being transmitted from the system, and have a response plan ready in the event of a breach.

62.     The FTC further recommends that companies not maintain Private Information longer than is needed for authorization of a transaction, limit access to sensitive data, require complex passwords to be used on networks, use industry-tested methods for security, monitor the network for suspicious activity, and verify that third-party service providers have implemented reasonable security measures.

63.     The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer data by treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by the FTCA. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

64.     These FTC enforcement actions include actions against financial institutions, like Defendant.

65.     As evidenced by the Data Breach, Defendant failed to properly implement basic data security practices and failed to audit, monitor, or ensure the integrity of its vendor's data security practices. Defendant's failure to employ reasonable and appropriate measures to protect against unauthorized access to Plaintiff's and Class Members' Private Information constitutes an unfair act or practice prohibited by Section 5 of the FTCA.

66.     Defendant was at all times fully aware of its obligation to protect the Private Information of its customers yet failed to comply with such obligations. Defendant was also aware of the significant repercussions that would result from its failure to do so.

**G.    *Defendant Failed to Comply with Industry Standards.***

67.    Experts studying cyber security routinely identify ecommerce platforms as being particularly vulnerable to cyberattacks because of the value of the Private Information which they collect and maintain.

68.    Several best practices have been identified that a minimum should be implemented by ecommerce providers like Defendant, including but not limited to educating all employees; strong passwords; multi-layer security, including firewalls, anti-virus, and anti-malware software; encryption, making data unreadable without a key; multi-factor authentication; backup data, and; limiting which employees can access sensitive data.

69.    A number of industry and national best practices have been published and should be used as a go-to resource when developing a business' cybersecurity standards. The Center for Internet Security ("CIS") released its Critical Security Controls. The CIS Benchmarks are the only consensus-based, best-practice security configuration guides both developed and accepted by government, business, industry, and academia.

70.    Other best cybersecurity practices that are standard in the ecommerce industry include installing appropriate malware detection software; monitoring and setting up network systems such as firewalls, switches and routers; monitoring and protection of physical security systems; protection against any possible communication system; training staff regarding critical points.

71.    Defendant failed to meet the minimum standards of any of the following frameworks: the NIST Cybersecurity Framework Version 1.1 (including without limitation PR.AC-1, PR.AC-3, PR.AC-4, PR.AC-5, PR.AC-6, PR.AC-7, PR.AT-1, PR.DS-1, PR.DS-5, PR.PT-1, PR.PT-3, DE.CM-1, DE.CM-4, DE.CM-7, DE.CM-8, and RS.CO-2), and the Center for Internet Security's Critical Security Controls (CIS CSC), which are all established standards in reasonable cybersecurity readiness.

**H.    *Defendant Breached Its Duty to Safeguard Plaintiff's and Class Members' Private Information.***

72.      In addition to its obligations under federal and state laws, Defendant owed a duty to Plaintiff and Class Members to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting the Private Information in its possession from being compromised, lost, stolen, accessed, and misused by unauthorized persons. Defendant owed a duty to Plaintiff and Class Members to provide reasonable security, including consistency with industry standards and requirements, and to ensure that its computer systems, networks, and protocols adequately protected the Private Information of Class Members

73.      Defendant breached its obligations to Plaintiff and Class Members and/or was otherwise negligent and reckless because it failed to properly maintain and safeguard its computer systems and data and failed to audit, monitor, or ensure the integrity of its vendor's data security practices. Defendant's unlawful conduct includes, but is not limited to, the following acts and/or omissions:

a.   Failing to maintain an adequate data security system that would reduce the risk of data breaches and cyberattacks;

b.   Failing to adequately protect customers' Private Information;

c.   Failing to properly monitor its own data security systems for existing intrusions;

d.   Failing to audit, monitor, or ensure the integrity of its vendor's data security practices;

e.   Failing to sufficiently train its employees and vendors regarding the proper handling of its customers Private Information;

f.   Failing to fully comply with FTC guidelines for cybersecurity in violation of the FTCA; and

g.   Otherwise breaching its duties and obligations to protect Plaintiff's and Class Members' Private Information.

74.      Defendant negligently and unlawfully failed to safeguard Plaintiff's and Class Members' Private Information by allowing cyberthieves to access its computer network and systems which contained unsecured and unencrypted Private Information.

CLASS ACTION COMPLAINT
14

75.    Had Defendant remedied the deficiencies in its information storage and security systems or those of its vendors and affiliates, followed industry guidelines, and adopted security measures recommended by experts in the field, it could have prevented intrusion into its information storage and security systems and, ultimately, the theft of Plaintiff's and Class Members' confidential Private Information.

**I.    Defendant Fails to Comply with HIPAA Guidelines**

76.    Defendant is a covered entity under HIPAA (45 C.F.R. § 160.102) and is required to comply with the HIPAA Privacy Rule and Security Rule, 45 C.F.R. Part 160 and Part 164, Subparts A and E ("Standards for Privacy of Individually Identifiable Health Information"), and Security Rule ("Security Standards for the Protection of Electronic Protected Health Information"), 45 C.F.R. Part 160 and Part 164, Subparts A and C.

77.    Defendant is subject to the rules and regulations for safeguarding electronic forms of medical information pursuant to the Health Information Technology Act ("HITECH").[12] *See* 42 U.S.C. §17921, 45 C.F.R. § 160.103.

78.    HIPAA's Privacy Rule or Standards for Privacy of Individually Identifiable Health Information establishes national standards for the protection of health information.

79.    HIPAA's Privacy Rule or Security Standards for the Protection of Electronic Protected Health Information establishes a national set of security standards for protecting health information that is kept or transferred in electronic form.

80.    HIPAA requires "compl[iance] with the applicable standards, implementation specifications, and requirements" of HIPAA "with respect to electronic protected health information." 45 C.F.R. § 164.302.

81.    "Electronic protected health information" is "individually identifiable health information … that is (i) transmitted by electronic media; maintained in electronic media." 45 C.F.R. § 160.103.

[12] HIPAA and HITECH work in tandem to provide guidelines and rules for maintaining protected health information. HITECH references and incorporates HIPAA.

82. HIPAA's Security Rule requires Defendant to do the following:

    a.    Ensure the confidentiality, integrity, and availability of all electronic protected health information the covered entity or business associate creates, receives, maintains, or transmits;

    b.    Protect against any reasonably anticipated threats or hazards to the security or integrity of such information;

    c.    Protect against any reasonably anticipated uses or disclosures of such information that are not permitted; and

    d.    Ensure compliance by its workforce.

83. HIPAA also requires Defendant to "review and modify the security measures implemented … as needed to continue provision of reasonable and appropriate protection of electronic protected health information." 45 C.F.R. § 164.306(e). Additionally, Defendant is required under HIPAA to "[i]mplement technical policies and procedures for electronic information systems that maintain electronic protected health information to allow access only to those persons or software programs that have been granted access rights." 45 C.F.R. § 164.312(a)(1).

84. HIPAA and HITECH also obligated Defendant to implement policies and procedures to prevent, detect, contain, and correct security violations, and to protect against uses or disclosures of electronic protected health information that are reasonably anticipated but not permitted by the privacy rules. *See* 45 C.F.R. § 164.306(a)(1) and § 164.306(a)(3); see also 42 U.S.C. §17902.

85. The HIPAA Breach Notification Rule, 45 C.F.R. §§ 164.400-414, also requires Defendant to provide notice of the Data Breach to each affected individual "without unreasonable delay and in no case later than 60 days following discovery of the breach."[13]

86. HIPAA requires a covered entity to have and apply appropriate sanctions against members of its workforce who fail to comply with the privacy policies and procedures of the covered entity or the requirements of 45 C.F.R. Part 164, Subparts D or E. See 45 C.F.R. §

---

[13]    Breach Notification Rule, U.S. Dep't of Health & Human Services, https://www.hhs.gov/hipaa/for-professionals/breach-notification/index.html.

164.530(e).

87.    HIPAA requires a covered entity to mitigate, to the extent practicable, any harmful effect that is known to the covered entity of a use or disclosure of protected health information in violation of its policies and procedures or the requirements of 45 C.F.R. Part 164, Subpart E by the covered entity or its business associate. See 45 C.F.R. § 164.530(f).

88.    HIPAA also requires the Office of Civil Rights ("OCR"), within the Department of Health and Human Services ("HHS"), to issue annual guidance documents on the provisions in the HIPAA Security Rule. See 45 C.F.R. §§ 164.302-164.318. For example, "HHS has developed guidance and tools to assist HIPAA covered entities in identifying and implementing the most cost effective and appropriate administrative, physical, and technical safeguards to protect the confidentiality, integrity, and availability of e-PHI and comply with the risk analysis requirements of the Security Rule." US Department of Health & Human Services, Security Rule Guidance Material.[31] The list of resources includes a link to guidelines set by the National Institute of Standards and Technology (NIST), which OCR says "represent the industry standard for good business practices with respect to standards for securing e-PHI." US Department of Health & Human Services, Guidance on Risk Analysis.[14]

J.    *Common Injuries & Damages*

89.    As a result of Defendant's ineffective and inadequate data security practices, the Data Breach, and the foreseeable consequences of Private Information ending up in the possession of criminals, the risk of identity theft to the Plaintiff and Class Members has materialized and is imminent, and Plaintiff and Class Members have all sustained actual injuries and damages, including fraud as well as: (a) invasion of privacy; (b) loss of time and loss of productivity incurred mitigating the materialized risk and imminent threat of identity theft risk; (c) the loss of benefit of the bargain (price premium damages); (d) diminution of value of their Private Information; (e) invasion of privacy; and (f) the continued risk to their Private Information, which remains in the possession of

---

[14]  https://www.hhs.gov/hipaa/for-professionals/security/guidance/guidance-riskanalysis/index.html.

Defendant, and which is subject to further breaches, so long as Defendant fails to undertake appropriate and adequate measures to protect Plaintiff's and Class Members' Private Information.

**K.**     ***The Data Breach Increases Victims' Risk of Identity Theft.***

90.     Plaintiff and Class Members are at a heightened risk of identity theft for years to come.

91.     The unencrypted Private Information of Class Members will end up for sale on the dark web because that is the *modus operandi* of hackers. In addition, unencrypted Private Information may fall into the hands of companies that will use the detailed Private Information for targeted marketing without the approval of Plaintiff and Class Members. Unauthorized individuals can easily access the Private Information of Plaintiff and Class Members.

92.     The link between a data breach and the risk of identity theft is simple and well established. Criminals acquire and steal Private Information to monetize the information. Criminals monetize the data by selling the stolen information on the black market to other criminals who then utilize the information to commit a variety of identity theft related crimes discussed below.

93.     One such example of criminals piecing together bits and pieces of compromised Private Information for profit is the development of "Fullz" packages.[15]

94.     With "Fullz" packages, cyber-criminals can cross-reference two sources of Private Information to marry unregulated data available elsewhere to criminally stolen data with an astonishingly complete scope and degree of accuracy in order to assemble complete dossiers on individuals.

**L.**     ***Loss of Time to Mitigate Risk of Identity Theft and Fraud***

95.     As a result of the recognized risk of identity theft, when a Data Breach occurs, and

---

[15] "Fullz" is fraudster speak for data that includes the information of the victim, including, but not limited to, the name, address, credit card information, social security number, date of birth, and more. As a rule of thumb, the more information you have on a victim, the more money that can be made off those credentials. *See*, *e.g.*, Brian Krebs, *Medical Records for Sale in Underground Stolen from Texas Life Insurance Firm*, Krebs on Security (Sep. 18, 2014), https://krebsonsecurity.com/2014/09/ medical-records-for-sale-in-underground-stolen-from-texas-life-insurance-firm (last visited 9/20/2023).

an individual is notified by a company that their Private Information was compromised, as in this Data Breach, the reasonable person is expected to take steps and spend time to address the dangerous situation, learn about the breach, and otherwise mitigate the risk of becoming a victim of identity theft of fraud. Failure to spend time taking steps to review accounts or credit reports could expose the individual to greater financial harm—yet, the resource and asset of time has been lost.

96.     Thus, due to the actual and imminent risk of identity theft, Plaintiff and Class Members must continue to monitor their financial accounts for many years to mitigate the risk of identity theft.

97.     Plaintiff and Class Members have spent, and will spend additional time in the future, on a variety of prudent actions to remedy the harms they have or may experience as a result of the Data Breach, such as contacting credit bureaus to place freezes on their accounts; changing passwords and resecuring their own computer networks; and checking their financial accounts for any indication of fraudulent activity, which may take years to detect.

98.     These efforts are consistent with the U.S. Government Accountability Office that released a report in 2007 regarding data breaches ("GAO Report") in which it noted that victims of identity theft will face "substantial costs and time to repair the damage to their good name and credit record."[16]

99.     These efforts are also consistent with the steps that FTC recommends that data breach victims take several steps to protect their personal and financial information after a data breach, including: contacting one of the credit bureaus to place a fraud alert (consider an extended fraud alert that lasts for seven years if someone steals their identity), reviewing their credit reports, contacting companies to remove fraudulent charges from their accounts, placing a credit freeze on their credit, and correcting their credit reports.[17]

100.    A study by Identity Theft Resource Center shows the multitude of harms caused by

---

[16] *See* United States Government Accountability Office, GAO-07-737, Personal Information: Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown (June 2007), https://www.gao.gov/new.items/d07737.pdf.

[17] *See* Federal Trade Commission, *Identity Theft.gov*, https://www.identitytheft.gov/Steps.

1  fraudulent use of personal and financial information:[18]



101.    And for those Class Members who experience actual identity theft and fraud, the United States Government Accountability Office released a report in 2007 regarding data breaches ("GAO Report") in which it noted that victims of identity theft will face "substantial costs and time to repair the damage to their good name and credit record."[19]

**M.    *Diminution Value of Private Information***

102.    Private Information is a valuable property right.[20] Its value is axiomatic, considering the value of Big Data in corporate America and the consequences of cyber thefts include heavy prison sentences. Even this obvious risk to reward analysis illustrates beyond doubt that Private Information has considerable market value.

---

[18]    Jason Steele, "Credit Card and ID Theft Statistics," Oct. 24, 2017, https://www.creditcards.com/credit-card-news/credit-card-security-id-theft-fraud-statistics-1276.php.

[19] *See* "Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown," at 2, U.S. GOV'T ACCOUNTABILITY OFFICE, June 2007, https://www.gao.gov/ new.items/d07737.pdf ("GAO Report").

[20] *See, e.g.*, Randall T. Soma, et al., Corporate Privacy Trend: The "Value" of Personally Identifiable Information Equals the "Value" of Financial Assets, 15 RICH. J.L. & TECH. 11, at *3-4 (2009).

103.    An active and robust legitimate marketplace for Private Information exists. In 2019, the data brokering industry was worth roughly $200 billion.[21]

104.    In fact, the data marketplace is so sophisticated that consumers can actually sell their non-public information directly to a data broker who in turn aggregates the information and provides it to marketers or app developers.[22,23]

105.    Consumers who agree to provide their web browsing history to the Nielsen Corporation can receive up to $50.00 a year.[24]

106.    Conversely sensitive Private Information can sell for as much as $363 per record on the dark web according to the Infosec Institute.[25]

107.    As a result of the Data Breach, Plaintiff's and Class Members' Private Information, which has an inherent market value in both legitimate and dark markets, has been damaged and diminished by its compromise and unauthorized release. However, this transfer of value occurred without any consideration paid to Plaintiff or Class Members for their property, resulting in an economic loss.

108.    At all relevant times, Defendant knew, or reasonably should have known, of the importance of safeguarding the Private Information of Plaintiff and Class Members, and of the foreseeable consequences that would occur if Defendant's data security system was breached, including, specifically, the significant costs that would be imposed on Plaintiff and Class Members as a result of a breach.

109.    Defendant was, or should have been, fully aware of the unique type and the significant volume of data on Defendant's network, amounting to thousands of individuals' detailed

---

[21] https://www.latimes.com/business/story/2019-11-05/column-data-brokers.

[22] https://datacoup.com/ (last visited Aug. 11, 2023).

[23] https://digi.me/what-is-digime/ (last visited Aug. 11, 2023).

[24] Nielsen Computer & Mobile Panel, *Frequently Asked Questions*, https://computermobilepanel.nielsen.com/ui/US/en/faqen.html.

[25] *See* Ashiq Ja, *Hackers Selling Healthcare Data in the Black Market*, InfoSec (July 27, 2015), https://resources.infosecinstitute.com/topic/hackers-selling-healthcare-data-in-the-black-market/.

1  personal information, upon information and belief, and thus, the significant number of individuals

2  who would be harmed by the exposure of the unencrypted data.

3       110.    The injuries to Plaintiff and Class Members were directly and proximately caused by

4  Defendant's failure to implement or maintain adequate data security measures for the Private

5  Information of Plaintiff and Class Members.

6       **N.    *Future Cost of Credit and Identity Theft Monitoring is Reasonable and Necessary.***

7       111.    Given the type of targeted attack in this case and sophisticated criminal activity, the

8  type of Private Information involved, and the volume of data obtained in the Data Breach, there is a

9  strong probability that entire batches of stolen information have been placed, or will be placed, on

10  the black market/dark web for sale and purchase by criminals intending to utilize the Private

11  Information for identity theft crimes.

12       112.    Such fraud may go undetected until debt collection calls commence months, or even

13  years, later.

14       113.    Consequently, Plaintiff and Class Members are at a present and continuous risk of

15  fraud and identity theft for many years into the future.

16       114.    The retail cost of credit monitoring and identity theft monitoring can cost around

17  $200 a year per Class Member. This is a reasonable and necessary cost to monitor to protect Class

18  Members from the risk of identity theft that arose from Defendant's Data Breach. This is a future

19  cost for a minimum of five years that Plaintiff and Class Members would not need to bear but for

20  Defendant's failure to safeguard their Private Information.

21       **O.    *Loss of the Benefit of the Bargain***

22       115.    Furthermore, Defendant's poor data security deprived Plaintiff and Class Members

23  of the benefit of their bargain. When agreeing to pay Defendant and/or its agents for products and/or

24  services, Plaintiff and other reasonable consumers understood and expected that they were, in part,

25  paying for the product and/or service and necessary data security to protect the Private Information,

26  when in fact, Defendant did not provide the expected data security. Accordingly, Plaintiff and Class

27  Members received products and/or services that were of a lesser value than what they reasonably

28

1    expected to receive under the bargains they struck with Defendant.

2        **P.    *Plaintiff's Experience***

3        116.    Plaintiff Angela Morgan has utilized Defendant's services in the past.

4        117.    Plaintiff was required to provide her Private Information to Defendant, including her

5    name, demographic information, Social Security number and PHI.

6        118.    At the time of the Data Breach, Defendant retained Plaintiff's Private Information in

7    its system.

8        119.    Plaintiff is very careful about sharing and protecting her Private Information.

9    Plaintiff stores any documents containing her Private Information in a safe and secure location. She

10   has never knowingly transmitted unencrypted sensitive Private Information over the internet or any

11   other unsecured source. Plaintiff would not have entrusted her Private Information to Defendant had

12   she known of Defendant's lax data security policies.

13       120.    Plaintiff received the Notice Letter, by U.S. mail, from Defendant. According to the

14   Notice Letter, Plaintiff's Private Information was improperly accessed and obtained by unauthorized

15   third parties.

16       121.    As a result of the Data Breach, and at the direction of Defendant's Notice Letter,

17   Plaintiff made reasonable efforts to mitigate the impact of the Data Breach, including considering

18   cancelling payment cards, changing passwords and resecuring her own computer network, and

19   checking her financial and credit accounts for any indication of fraudulent activity, which may take

20   years to detect. Plaintiff has spent significant time dealing with the Data Breach—valuable time

21   Plaintiff otherwise would have spent on other activities, including but not limited to work and/or

22   recreation. This time has been lost forever and cannot be recaptured.

23       122.    Plaintiff suffered actual injury from having his Private Information compromised as

24   a result of the Data Breach including, but not limited to: (i) lost or diminished value of his Private

25   Information; (ii) lost opportunity costs associated with attempting to mitigate the actual

26   consequences of the Data Breach, including but not limited to lost time; (iii) invasion of privacy; (iv)

27   loss of benefit of the bargain; and (v) the continued and certainly increased risk to his Private

28

CLASS ACTION COMPLAINT
23

Information, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) remains backed up in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Private Information.

123.    Plaintiff further suffered actual injury. Upon information and belief, her Private Information is now on the dark web as a result of the Data Breach. In addition, she has experienced an increase in spam, which, upon information and belief, was caused by the Data Breach and began following the Data Breach.

124.    The Data Breach has caused Plaintiff to suffer fear, anxiety, and stress, which has been compounded by the fact that Defendant has still not fully informed her of key details about the Data Breach's occurrence.

125.    As a result of the Data Breach, Plaintiff anticipates spending considerable time and money on an ongoing basis to try to mitigate and address harms caused by the Data Breach.

126.    As a result of the Data Breach, Plaintiff is at a present risk and will continue to be at increased risk of identity theft and fraud for years to come.

127.    Plaintiff has a continuing interest in ensuring that her Private Information, which, upon information and belief, remains backed up in Defendant's possession, is protected and safeguarded from future breaches.

## V.  CLASS ACTION ALLEGATIONS

128.    Plaintiff brings this action individually and on behalf of all other persons similarly situated, pursuant to Federal Rule of Civil Procedure 23(a), 23(b)(1), 23(b)(2), and 23(b)(3).

129.    Specifically, Plaintiff proposes the following class definitions, subject to amendment as appropriate:

> **Nationwide Class**
> All individuals in the United States whose Private Information was disclosed in the Data Breach (the "Class").

130.    Excluded from the Class are Defendant and its parents or subsidiaries, any entities in which it has a controlling interest, as well as its officers, directors, affiliates, legal representatives,

1    heirs, predecessors, successors, and assigns. Also excluded is any Judge to whom this case is

2    assigned as well as their judicial staff and immediate family members.

3        131.    Plaintiff reserves the right to modify or amend the definition of the proposed Class

4    as well as add any subclasses, before the Court determines whether certification is appropriate.

5        132.    The proposed Class meets the criteria for certification under Fed. R. Civ. P. 23(a),

6    (b)(2), and (b)(3).

7        133.    <u>Numerosity</u>. The Class Members are so numerous that joinder of all members is

8    impracticable. Upon information and belief, Plaintiff believes that the proposed Class includes

9    thousands of individuals who have been damaged by Defendant's conduct as alleged herein. The

10   precise number of Class Members is unknown to Plaintiff but may be ascertained from Defendant's

11   records.

12       134.    <u>Commonality</u>. There are questions of law and fact common to the Class which

13   predominate over any questions affecting only individual Class Members. These common questions

14   of law and fact include, without limitation:

15       a.    Whether Defendant engaged in the conduct alleged herein;

16       b.    When Defendant learned of the Data Breach;

17       c.    Whether Defendant's response to the Data Breach was adequate;

18       d.    Whether Defendant unlawfully shared, lost, or disclosed Plaintiff's and Class

19             Members' Private Information;

20       e.    Whether Defendant failed to implement and maintain reasonable security procedures

21             and practices appropriate to the nature and scope of the Private Information

22             compromised in the Data Breach;

23       f.    Whether Defendant's data security systems prior to and during the Data Breach

24             complied with applicable data security laws and regulations;

25       g.    Whether Defendant's data security systems prior to and during the Data Breach were

26             consistent with industry standards;

27       h.    Whether Defendant owed a duty to Class Members to safeguard their Private

28

Information;

i. Whether Defendant breached its duty to Class Members to safeguard their Private Information;

j. Whether hackers obtained Class Members' Private Information via the Data Breach;

k. Whether Defendant had a legal duty to provide timely and accurate notice of the Data Breach to Plaintiff and the Class Members;

l. Whether Defendant breached its duty to provide timely and accurate notice of the Data Breach to Plaintiff and Class Members;

m. Whether Defendant knew or should have known that its data security systems and monitoring processes were deficient;

n. What damages Plaintiff and Class Members suffered as a result of Defendant's misconduct;

o. Whether Defendant's conduct was negligent;

p. Whether Defendant was unjustly enriched;

q. Whether Plaintiff and Class Members are entitled to actual and/or statutory damages;

r. Whether Plaintiff and Class Members are entitled to credit or identity monitoring and monetary relief; and

s. Whether Plaintiff and Class Members are entitled to equitable relief, including injunctive relief, restitution, disgorgement, and/or the establishment of a constructive trust.

135. <u>Typicality</u>. Plaintiff's claims are typical of those of other Class Members because Plaintiff's Private Information, like that of every other Class Member, was compromised in the Data Breach. Plaintiff's claims are typical of those of the other Class Members because, inter alia, all Class Members were injured through the common misconduct of Defendant. Plaintiff is advancing the same claims and legal theories on behalf of himself and all other Class Members, and there are no defenses that are unique to Plaintiff. The claims of Plaintiff and those of Class Members arise

1   from the same operative facts and are based on the same legal theories.

2       136.    Adequacy of Representation. Plaintiff will fairly and adequately represent and

3   protect the interests of Class Members. Plaintiff's counsel is competent and experienced in litigating

4   class actions, including data privacy litigation of this kind.

5       137.    Predominance. Defendant has engaged in a common course of conduct toward

6   Plaintiff and Class Members in that all of Plaintiff's and Class Members' data was stored on the

7   same computer systems and unlawfully accessed and exfiltrated in the same way. The common

8   issues arising from Defendant's conduct affecting Class Members set out above predominate over

9   any individualized issues. Adjudication of these common issues in a single action has important and

10  desirable advantages of judicial economy.

11      138.    Superiority. A Class action is superior to other available methods for the fair and

12  efficient adjudication of this controversy and no unusual difficulties are likely to be encountered in

13  the management of this class action. Class treatment of common questions of law and fact is superior

14  to multiple individual actions or piecemeal litigation. Absent a Class action, most Class Members

15  would likely find that the cost of litigating their individual claims is prohibitively high and would

16  therefore have no effective remedy. The prosecution of separate actions by individual Class

17  Members would create a risk of inconsistent or varying adjudications with respect to individual

18  Class Members, which would establish incompatible standards of conduct for Defendant. In contrast,

19  conducting this action as a class action presents far fewer management difficulties, conserves

20  judicial resources and the parties' resources, and protects the rights of each Class Member.

21      139.    Class certification is also appropriate under Fed. R. Civ. P. 23(b)(2). Defendant has

22  acted and/or refused to act on grounds generally applicable to the Class such that final injunctive

23  relief and/or corresponding declaratory relief is appropriate as to the Class as a whole.

24      140.    Finally, all members of the proposed Class are readily ascertainable. Defendant has

25  access to the names and addresses and/or email addresses of Class Members affected by the Data

26  Breach. Class Members have already been preliminarily identified and sent Notice of the Data

27  Breach by Defendant.

28

**CLAIMS FOR RELIEF**

**COUNT I**

**Negligence and Negligence *Per Se***

**(On Behalf of Plaintiff and the Class)**

141.    Plaintiff restates and realleges the preceding factual allegations set forth above as if fully set forth herein.

142.    Defendant requires its customers, including Plaintiff and Class Members, to submit non-public Private Information in the ordinary course of providing services.

143.    Defendant gathered and stored the Private Information of Plaintiff and Class Members as part of its business, which affects commerce.

144.    Plaintiff and Class Members entrusted Defendant with their Private Information with the understanding that Defendant would safeguard their information.

145.    Defendant had full knowledge of the sensitivity of the Private Information and the types of harm that Plaintiff and Class Members could and would suffer if the Private Information were wrongfully disclosed.

146.    By assuming the responsibility to collect and store this data, and in fact doing so, and sharing it and using it for commercial gain, Defendant had a duty of care to use reasonable means to secure and to prevent disclosure of the information, and to safeguard the information from theft. Defendant's duty included a responsibility to exercise due diligence in selecting IT vendors and to audit, monitor, and ensure the integrity of its vendor's systems and practices and to give prompt notice to those affected in the case of a data breach.

147.    Defendant had a duty to employ reasonable security measures under Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, which prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair practice of failing to use reasonable measures to protect confidential data.

148.    Defendant owed a duty of care to Plaintiff and Class Members to provide data security consistent with industry standards and other requirements discussed herein, and to ensure

that its systems and networks, and the personnel responsible for them, adequately protected the Private Information.

149.     Defendant's duty of care to use reasonable security measures arose as a result of the special relationship that existed between Defendant and Plaintiff and Class Members. That special relationship arose because Plaintiff and the Class entrusted Defendant with their confidential Private Information, a necessary part of being customers of Defendant.

150.     Defendant's duty to use reasonable care in protecting confidential data arose not only as a result of the statutes and regulations described above, but also because Defendant is bound by industry standards to protect confidential Private Information.

151.     Defendant was subject to an "independent duty," untethered to any contract between Defendant and Plaintiff or the Class.

152.     Defendant also had a duty to exercise appropriate clearinghouse practices to remove former customers' Private Information it was no longer required to retain pursuant to regulations.

153.     Moreover, Defendant had a duty to promptly and adequately notify Plaintiff and the Class of the Data Breach.

154.     Defendant had and continues to have a duty to adequately disclose that the Private Information of Plaintiff and the Class within Defendant's possession might have been compromised, how it was compromised, and precisely the types of data that were compromised and when. Such notice was necessary to allow Plaintiff and the Class to take steps to prevent, mitigate, and repair any identity theft and the fraudulent use of their Private Information by third parties.

155.     Defendant's duty to use reasonable security measures under HIPAA required Defendant to "reasonably protect" confidential data from "any intentional or unintentional use or disclosure" and to "have in place appropriate administrative, technical, and physical safeguards to protect the privacy of protected health information." 45 C.F.R. § 164.530(c)(l). Some or all of the healthcare and/or medical information at issue in this case constitutes "protected health information" within the meaning of HIPAA.

156.   Defendant breached its duties, pursuant to HIPAA and the FTC Act, and other applicable standards, and thus was negligent, by failing to use reasonable measures to protect Class Members' Private Information. The specific negligent acts and omissions committed by Defendant include, but are not limited to, the following:

a.   Failing to adopt, implement, and maintain adequate security measures to safeguard Class Members' Private Information;

b.   Failing to adequately monitor the security of their networks and systems;

c.   Failing to audit, monitor, or ensure the integrity of its vendor's data security practices;

d.   Allowing unauthorized access to Class Members' Private Information;

e.   Failing to detect in a timely manner that Class Members' Private Information had been compromised;

f.   Failing to remove former customers' Private Information it was no longer required to retain pursuant to regulations; and

g.   Failing to timely and adequately notify Class Members about the Data Breach's occurrence and scope, so that they could take appropriate steps to mitigate the potential for identity theft and other damages.

157.   Defendant violated Section 5 of the FTC Act by failing to use reasonable measures to protect Private Information and not complying with applicable industry standards, as described in detail herein. Defendant's conduct was particularly unreasonable given the nature and amount of Private Information it obtained and stored and the foreseeable consequences of the immense damages that would result to Plaintiff and the Class.

158.   Plaintiff and Class Members were within the class of persons the Federal Trade Commission Act were intended to protect and the type of harm that resulted from the Data Breach was the type of harm these statues were intended to guard against.

159.   Defendant's violation of Section 5 of the FTC Act constitutes negligence per se.

160.   The FTC has pursued enforcement actions against businesses, which, as a result of

1   their failure to employ reasonable data security measures and avoid unfair and deceptive practices,

2   caused the same harm as that suffered by Plaintiff and the Class.

3       161.    A breach of security, unauthorized access, and resulting injury to Plaintiff and the

4   Class was reasonably foreseeable, particularly in light of Defendant's inadequate security practices.

5       162.    It was foreseeable that Defendant's failure to use reasonable measures to protect

6   Class Members' Private Information would result in injury to Class Members. Further, the breach

7   of security was reasonably foreseeable given the known high frequency of cyberattacks and data

8   breaches in the financial industry.

9       163.    Defendant has full knowledge of the sensitivity of the Private Information and the

10  types of harm that Plaintiff and the Class could and would suffer if the Private Information were

11  wrongfully disclosed.

12      164.    Plaintiff and the Class were the foreseeable and probable victims of any inadequate

13  security practices and procedures. Defendant knew or should have known of the inherent risks in

14  collecting and storing the Private Information of Plaintiff and the Class, the critical importance of

15  providing adequate security of that Private Information, and the necessity for encrypting Private

16  Information stored on Defendant's systems.

17      165.    It was therefore foreseeable that the failure to adequately safeguard Class

18  Members' Private Information would result in one or more types of injuries to Class Members.

19      166.    Plaintiff and the Class had no ability to protect their Private Information that was

20  in, and possibly remains in, Defendant's possession.

21      167.    Defendant was in a position to protect against the harm suffered by Plaintiff and

22  the Class as a result of the Data Breach.

23      168.    Defendant's duty extended to protecting Plaintiff and the Class from the risk of

24  foreseeable criminal conduct of third parties, which has been recognized in situations where the

25  actor's own conduct or misconduct exposes another to the risk or defeats protections put in place to

26  guard against the risk, or where the parties are in a special relationship. *See* Restatement (Second)

27  of Torts § 302B. Numerous courts and legislatures have also recognized the existence of a specific

28

duty to reasonably safeguard personal information.

169.     Defendant has admitted that the Private Information of Plaintiff and the Class was wrongfully lost and disclosed to unauthorized third persons as a result of the Data Breach.

170.     But for Defendant's wrongful and negligent breach of duties owed to Plaintiff and the Class, the Private Information of Plaintiff and the Class would not have been compromised.

171.     There is a close causal connection between Defendant's failure to implement security measures to protect the Private Information of Plaintiff and the Class and the harm, or risk of imminent harm, suffered by Plaintiff and the Class. The Private Information of Plaintiff and the Class was lost and accessed as the proximate result of Defendant's failure to exercise reasonable care in safeguarding such Private Information by adopting, implementing, and maintaining appropriate security measures.

172.     As a direct and proximate result of Defendant's negligence, Plaintiff and the Class have suffered and will suffer injury, including but not limited to: (i) invasion of privacy; (ii) lost or diminished value of Private Information; (iii) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (iv) loss of benefit of the bargain; (v) and increase in spam calls, texts, and/or emails; and (vi) the continued and certainly increased risk to their Private Information, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) remains backed up in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Private Information.

173.     As a direct and proximate result of Defendant's negligence, Plaintiff and the Class have suffered and will continue to suffer other forms of injury and/or harm, including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

174.     Additionally, as a direct and proximate result of Defendant's negligence, Plaintiff and the Class have suffered and will suffer the continued risks of exposure of their Private Information, which remain in Defendant's possession and is subject to further unauthorized

1    disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect

2    the Private Information in its continued possession.

3    175.    Plaintiff and Class Members are entitled to compensatory and consequential

4    damages suffered as a result of the Data Breach.

5    176.    Defendant's negligent conduct is ongoing, in that it still holds the Private

6    Information of Plaintiff and Class Members in an unsafe and insecure manner.

7    177.    Plaintiff and Class Members are also entitled to injunctive relief requiring

8    Defendant to (i) strengthen its data security systems and monitoring procedures; (ii) submit to

9    future annual audits of those systems and monitoring procedures; and (iii) continue to provide

10   adequate credit monitoring to all Class Members.

11                                        **COUNT II**

12                               **Breach Of Implied Contract**

13                            **(On Behalf of Plaintiff and the Class)**

14   178.    Plaintiff restates and realleges fact set forth above as if fully set forth herein.

15   179.    Plaintiff and Class Members were required to provide their Private Information to

16   Defendant as a condition of receiving services from Defendant.

17   180.    Plaintiff and the Class entrusted their Private Information to Defendant. In so

18   doing, Plaintiff and the Class entered into implied contracts with Defendant by which Defendant

19   agreed to safeguard and protect such information, to keep such information secure and confidential,

20   and to timely and accurately notify Plaintiff and the Class if their data had been breached and

21   compromised or stolen.

22   181.    In entering into such implied contracts, Plaintiff and Class Members reasonably

23   believed and expected that Defendant's data security practices complied with relevant laws and

24   regulations and were consistent with industry standards.

25   182.    Implicit in the agreement between Plaintiff and Class Members and the Defendant

26   to provide Private Information, was the latter's obligation to: (a) use such Private Information for

27   business purposes only, (b) take reasonable steps to safeguard that Private Information, (c) prevent

28

unauthorized disclosures of the Private Information, (d) provide Plaintiff and Class Members with prompt and sufficient notice of any and all unauthorized access and/or theft of their Private Information, (e) reasonably safeguard and protect the Private Information of Plaintiff and Class Members from unauthorized disclosure or uses, (f) retain the Private Information only under conditions that kept such information secure and confidential.

183. The mutual understanding and intent of Plaintiff and Class Members on the one hand, and Defendant, on the other, is demonstrated by their conduct and course of dealing.

184. Defendant solicited, offered, and invited Plaintiff and Class Members to provide their Private Information as part of Defendant's regular business practices. Plaintiff and Class Members accepted Defendant's offers and provided their Private Information to Defendant.

185. In accepting the Private Information of Plaintiff and Class Members, Defendant understood and agreed that it was required to reasonably safeguard the Private Information from unauthorized access or disclosure.

186. On information and belief, at all relevant times Defendant promulgated, adopted, and implemented written privacy policies whereby it expressly promised Plaintiff and Class Members that it would only disclose Private Information under certain circumstances, none of which relate to the Data Breach.

187. On information and belief, Defendant further promised to comply with industry standards and to make sure that Plaintiff's and Class Members' Private Information would remain protected.

188. Plaintiff and Class Members paid money and provided their Private Information to Defendant with the reasonable belief and expectation that Defendant would use part of its earnings to obtain adequate data security. Defendant failed to do so.

189. Plaintiff and Class Members would not have entrusted their Private Information to Defendant in the absence of the implied contract between them and Defendant to keep their information reasonably secure.

190. Plaintiff and Class Members would not have entrusted their Private Information to

Defendant in the absence of their implied promise to monitor their computer systems and networks to ensure that it adopted reasonable data security measures.

191.   Plaintiff and Class Members fully and adequately performed their obligations under the implied contracts with Defendant.

192.   Defendant breached the implied contracts it made with Plaintiff and the Class by failing to safeguard and protect their personal information, by failing to delete the information of Plaintiff and the Class once the relationship ended, and by failing to provide accurate notice to them that personal information was compromised as a result of the Data Breach.

193.   As a direct and proximate result of Defendant's breach of the implied contracts, Plaintiff and Class Members sustained damages, as alleged herein, including the loss of the benefit of the bargain.

194.   Plaintiff and Class Members are entitled to compensatory, consequential, and nominal damages suffered as a result of the Data Breach.

195.   Plaintiff and Class Members are also entitled to injunctive relief requiring Defendant to, *e.g.*, (i) strengthen its data security systems and monitoring procedures; (ii) submit to future annual audits of those systems and monitoring procedures; and (iii) immediately provide adequate credit monitoring to all Class Members.

## **COUNT III**

### **Unjust Enrichment / Quasi Contract**

### **(On Behalf of Plaintiff and the Class)**

196.   Plaintiff restates and realleges fact set forth above as if fully set forth herein.

197.   This count is pleaded in the alternative to the Breach of Implied Contract claim above (Count II).

198.   Plaintiff and Class Members conferred a monetary benefit on Defendant. Specifically, they paid for services from Defendant and/or its agents and in so doing also provided Defendant with their Private Information. In exchange, Plaintiff and Class Members should have received from Defendant the services that were the subject of the transaction and should have had

1  their Private Information protected with adequate data security.

2       199.    Defendant knew that Plaintiff and Class Members conferred a benefit upon it and

3  has accepted and retained that benefit by accepting and retaining the Private Information entrusted

4  to it. Defendant profited from Plaintiff's retained data and used Plaintiff's and Class Members'

5  Private Information for business purposes.

6       200.    Defendant failed to secure Plaintiff's and Class Members' Private Information and,

7  therefore, did not fully compensate Plaintiff or Class Members for the value that their Private

8  Information provided.

9       201.    Defendant acquired Private Information through inequitable record retention as it

10  failed to disclose the inadequate data security practices previously alleged.

11       202.    If Plaintiff and Class Members had known that Defendant would not use adequate

12  data security practices, procedures, and protocols to adequately monitor, supervise, and secure their

13  Private Information, they would have entrusted their Private Information to Defendant or obtained

14  services from Defendant.

15       203.    Plaintiff and Class Members have no adequate remedy at law.

16       204.    Under the circumstances, it would be unjust for Defendant to be permitted to retain

17  any of the benefits that Plaintiff and Class Members conferred upon it.

18       205.    As a direct and proximate result of Defendant's conduct, Plaintiff and Class

19  Members have suffered and will suffer injury, including but not limited to: (i) invasion of privacy;

20  (ii) lost or diminished value of Private Information; (iii) lost time and opportunity costs associated

21  with attempting to mitigate the actual consequences of the Data Breach; (iv) loss of benefit of the

22  bargain; (v) and increase in spam calls, texts, and/or emails; and (vi) the continued and certainly

23  increased risk to their Private Information, which: (a) remains unencrypted and available for

24  unauthorized third parties to access and abuse; and (b) remains backed up in Defendant's

25  possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake

26  appropriate and adequate measures to protect the Private Information.

27       206.    Plaintiff and Class Members are entitled to full refunds, restitution, and/or damages

28

from Defendant and/or an order proportionally disgorging all profits, benefits, and other compensation obtained by Defendant from its wrongful conduct. This can be accomplished by establishing a constructive trust from which the Plaintiff and Class Members may seek restitution or compensation.

207.    Plaintiff and Class Members may not have an adequate remedy at law against Defendant, and accordingly, they plead this claim for unjust enrichment in addition to, or in the alternative to, other claims pleaded herein.

**COUNT IV**

**Violation of the California Unfair Competition Law,**

**Cal. Bus. & Prof. Code §17200 *et seq.***

**(By Plaintiff on Behalf of the Class)**

208.    Plaintiff restates and realleges facts set forth above as if fully set forth herein.

209.    Defendant is a "person" defined by Cal. Bus. & Prof. Code § 17201.

210.    Defendant violated Cal. Bus. & Prof. Code § 17200 et seq. ("UCL") by engaging in unlawful, unfair, and deceptive business acts and practices.

211.    Defendant's "unfair" acts and practices include:

a.    Defendant failed to implement and maintain reasonable security measures to protect Plaintiff's and Class Members' personal information from unauthorized disclosure, release, data breaches, and theft, which was a direct and proximate cause of the Defendant Data Breach. Defendant failed to identify foreseeable security risks, remediate identified security risks, and adequately improve security following previous cybersecurity incidents and known coding vulnerabilities in the industry;

b.    Defendant's failure to implement and maintain reasonable security measures also was contrary to legislatively-declared public policy that seeks to protect consumers' data and ensure that entities that are trusted with it use appropriate security measures. These policies are reflected in laws, including the FTC Act

(15 U.S.C. § 45), California's Customer Records Act (Cal. Civ. Code § 1798.80 et seq.), and California's Consumer Privacy Act (Cal. Civ. Code § 1798.150);

    c.    Defendant's failure to implement and maintain reasonable security measures also led to substantial consumer injuries, as described above, that are not outweighed by any countervailing benefits to consumers or competition. Moreover, because consumers could not know of Defendant's inadequate security, consumers could not have reasonably avoided the harms that Defendant caused; and

    d.    Engaging in unlawful business practices by violating Cal. Civ. Code § 1798.82.

212.    Defendant has engaged in "unlawful" business practices by violating multiple laws, including the FTC Act, 15 U.S.C. § 45, and California common law.

213.    Defendant's unlawful, unfair, and deceptive acts and practices include:

    a.    Failing to implement and maintain reasonable security and privacy measures to protect Plaintiff's and Class Members' personal information, which was a direct and proximate cause of the Defendant Data Breach;

    b.    Failing to identify foreseeable security and privacy risks, remediate identified security and privacy risks, which was a direct and proximate cause of the Defendant Data Breach;

    c.    Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiff's and Class Members' personal information, including duties imposed by the FTC Act, 15 U.S.C. § 45, which was a direct and proximate cause of the Defendant Data Breach;

    d.    Misrepresenting that it would protect the privacy and confidentiality of Plaintiff's and Class Members' personal information, including by implementing and maintaining reasonable security measures;

e.    Misrepresenting that it would comply with common law and statutory duties pertaining to the security and privacy of Plaintiff's and Class Members' personal information, including duties imposed by the FTC Act, 15 U.S.C. § 45 and HIPAA;

f.    Omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure Plaintiff's and Class Members' personal information; and

g.    Omitting, suppressing, and concealing the material fact that it did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiff's and Class Members' personal information, including duties imposed by the FTC Act, 15 U.S.C. § 45.

214.    Defendant's representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of Defendant's data security and ability to protect the confidentiality of consumers' personal information.

215.    As a direct and proximate result of Defendant's unfair, unlawful, and fraudulent acts and practices, Plaintiff and Class Members' were injured and lost money or property, which would not have occurred but for the unfair and deceptive acts, practices, and omissions alleged herein, time and expenses related to monitoring their financial accounts for fraudulent activity, an increased, imminent risk of fraud and identity theft, and loss of value of their personal information.

216.    Defendant's violations were, and are, willful, deceptive, unfair, and unconscionable.

217.    Plaintiff and Class Members have lost money and property as a result of Defendant's conduct in violation of the UCL, as stated herein and above.

218.    By deceptively storing, collecting, and disclosing their personal information, Defendant has taken money or property from Plaintiff and Class Members.

219.    By deceptively storing, collecting, and disclosing their personal information, Plaintiff and Class Members overpaid Defendant for services that did not include proper data

1  security for their Private Information.

2  220.   Plaintiff and Class Members would not have provided their Private Information to

3  Defendant or paid Defendant money for services if Plaintiff and Class Members had known that

4  Defendant's data security measures were inadequate to protect their Private Information.

5  221.   Defendant acted intentionally, knowingly, and maliciously to violate California's

6  Unfair Competition Law, and recklessly disregarded Plaintiff's and Class Members' rights.

7  222.   Plaintiff and Class Members seek all monetary and nonmonetary relief allowed by

8  law, including restitution of all profits stemming from Defendant's unfair, unlawful, and fraudulent

9  business practices or use of their personal information; declaratory relief; reasonable attorneys' fees

10  and costs under California Code of Civil Procedure § 1021.5; injunctive relief; and other

11  appropriate equitable relief, including public injunctive relief.

12  ## COUNT V

13  **DECLARATORY JUDGMENT**

14  **(By Plaintiff on Behalf of the Class)**

15  223.   Plaintiff restates and realleges facts set forth above as if fully set forth herein.

16  224.   Under the Declaratory Judgment Act, 28 U.S.C. § 2201, et seq., this Court is

17  authorized to enter a judgment declaring the rights and legal relations of the parties and grant further

18  necessary relief. Furthermore, the Court has broad authority to restrain acts, such as here, that are

19  tortious and violate the terms of the federal and state statutes described in this Complaint.

20  225.   Defendant owes a duty of care to Plaintiff and Class Members which required it to

21  adequately secure Private Information.

22  226.   Defendant still possesses Private Information regarding Plaintiff and Class

23  Members.

24  227.   Plaintiff alleges that Defendant's data security measures remain inadequate.

25  Furthermore, Plaintiff continues to suffer injury as a result of the compromise of Private

26  Information, and remains at imminent risk that further compromises of the Private Information will

27  occur in the future.

28

228.     Under its authority pursuant to the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following:

    a.   Defendant owes a legal duty to secure customers' Private Information and to timely notify customers of a data breach under the common law and Section 5 of the FTCA;

    b.   Defendant's existing security measures do not comply with its explicit or implicit contractual obligations and duties of care to provide reasonable security procedures and practices appropriate to the nature of the information to protect customers' Private Information; and

    c.   Defendant continues to breach this legal duty by failing to employ reasonable measures to secure customers' Private Information.

229.   This Court also should issue corresponding prospective injunctive relief requiring Defendant to employ adequate security protocols consistent with law and industry standards to protect customers' Private Information, including the following:

    a. Order Defendant to provide lifetime credit monitoring and identity theft insurance to Plaintiff and Class Members, and

    b. Order Defendant to comply with its explicit or implicit contractual obligations and duties of care, Defendant must implement and maintain reasonable security measures.

230.   If an injunction is not issued, Plaintiff will suffer irreparable injury, and lack an adequate legal remedy, in the event of another data breach at Defendant. The risk of another such breach is real, immediate, and substantial. If another breach at Defendant occurs, Plaintiff will not have an adequate remedy at law because many of the resulting injuries are not readily quantifiable.

231.   The hardship to Plaintiff if an injunction does not issue exceeds the hardship to Defendant if an injunction is issued, especially considering the Data Breach is the second breach of Defendant's network and systems in less than two years. Therefore, Plaintiff will likely be subjected to substantial identity theft and other damage. On the other hand, the cost to Defendant of complying with an injunction by finally employing reasonable prospective data security measures

1    is relatively minimal, and Defendant has a pre-existing legal obligation to employ such measures.

2        232.    Issuance of the requested injunction will not disserve the public interest. To the

3    contrary, such an injunction would benefit the public by preventing a subsequent data breach at

4    Defendant, thus eliminating the additional injuries that would result to Plaintiff and customers

5    whose Private Information would be further compromised.

6                            **PRAYER FOR RELIEF**

7        WHEREFORE**,** Plaintiff, on behalf of himself and Class Members, requests judgment against

8    Defendant and that the Court grant the following:

9        A.  For an Order certifying this action as a class action and appointing Plaintiff and his

10           counsel to represent the Class and Subclass, pursuant to Federal Rule of Civil

11           Procedure 23;

12       B.  For equitable relief enjoining Defendant from engaging in the wrongful conduct

13           complained of herein pertaining to the misuse and/or disclosure of Plaintiff's and

14           Class Members' Private Information, and from refusing to issue prompt, complete

15           and accurate disclosures to Plaintiff and Class Members;

16       C.  For injunctive relief requested by Plaintiff, including, but not limited to, injunctive

17           and other equitable relief as is necessary to protect the interests of Plaintiff and

18           Class Members, including but not limited to an order:

19              i.  prohibiting Defendant from engaging in the wrongful and unlawful acts

20                  described herein;

21              ii. requiring Defendant to protect, including through encryption, all data

22                  collected through the course of their business in accordance with all

23                  applicable regulations, industry standards, and federal, state or local laws;

24              iii. requiring Defendant to delete, destroy, and purge the personal identifying

25                  information of Plaintiff and Class Members unless Defendant can provide

26                  to the Court reasonable justification for the retention and use of such

27                  information when weighed against the privacy interests of Plaintiff and

28

CLASS ACTION COMPLAINT
42

Class Members;

  iv. requiring Defendant to implement and maintain a comprehensive Information Security Program designed to protect the confidentiality and integrity of the Private Information of Plaintiff and Class Members;

  v. prohibiting Defendant from maintaining the Private Information of Plaintiff and Class Members on a cloud-based database;

  vi. requiring Defendant to engage independent third-party security auditors/penetration testers and ordering Defendant to promptly correct any problems or issues detected by such third-party security auditors;

  vii. requiring Defendant to engage independent third-party security auditors and internal personnel to run automated security monitoring;

  viii. requiring Defendant to audit, test, and train their security personnel regarding any new or modified procedures; requiring Defendant to segment data by, among other things, creating firewalls and access controls so that if one area of Defendant's network is compromised, hackers cannot gain access to other portions of Defendant's systems;

  ix. requiring Defendant to conduct regular database scanning and securing checks;

  x. requiring Defendant to establish an information security training program that includes at least annual information security training for all employees, with additional training to be provided as appropriate based upon the employees' respective responsibilities with handling personal identifying information, as well as protecting the personal identifying information of Plaintiff and Class Members;

  xi. requiring Defendant to routinely and continually conduct internal training and education, and on an annual basis to inform internal security personnel how to identify and contain a breach when it occurs and what to do in

response to a breach;

      xii.    requiring Defendant to implement a system of tests to assess its respective employees' knowledge of the education programs discussed in the preceding subparagraphs, as well as randomly and periodically testing employees compliance with Defendant's policies, programs, and systems for protecting personal identifying information;

      xiii.    requiring Defendant to implement, maintain, regularly review, and revise as necessary a threat management program designed to appropriately monitor Defendant's information networks for threats, both internal and external, and assess whether monitoring tools are appropriately configured, tested, and updated;

      xiv.    requiring Defendant to meaningfully educate all Class Members about the threats that they face as a result of the loss of their confidential personal identifying information to third parties, as well as the steps affected individuals must take to protect themselves;

      xv.    requiring Defendant to implement logging and monitoring programs sufficient to track traffic to and from Defendant's servers; and

      xvi.    for a period of 10 years, appointing a qualified and independent third party assessor to conduct a SOC 2 Type 2 attestation on an annual basis to evaluate Defendant's compliance with the terms of the Court's final judgment, to provide such report to the Court and to counsel for the class, and to report any deficiencies with compliance of the Court's final judgment;

D.  For an award of actual damages, compensatory damages, statutory damages, and nominal damages, in an amount to be determined, as allowable by law;

E.  For an award of punitive damages, as allowable by law;

F.  For an award of attorneys' fees and costs, and any other expenses, including expert

1    witness fees;

2    G.  Pre- and post-judgment interest on any amounts awarded; and

3    H.  Such other and further relief as this court may deem just and proper.

4    **<u>DEMAND FOR JURY TRIAL</u>**

5    Plaintiff demands a trial by jury on all issues so triable.

6    Dated:  November 14, 2023.                    Respectfully submitted,

7                                                  */s/ Kristen Lake Cardoso*
                                                   Kristen Lake Cardoso (SBN 338762)
8                                                  **KOPELOWITZ OSTROW P.A.**
                                                   One West Las Olas Blvd., Suite 500
9                                                  Fort Lauderdale, Florida 33301
                                                   Telephone: 954-525-4100
10                                                 cardoso@kolawyers.com
                                                   ostrow@kolawyers.com
11
                                                   *Counsel for Plaintiff and the Proposed Class*
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28